UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PBTM LLC,<br><br>                         Plaintiff,<br><br>        v.<br><br>FOOTBALL NORTHWEST LLC and NFL PROPERTIES LLC,<br><br>                         Defendants | No. 19-cv-2081<br><br>COMPLAINT FOR DECLARATORY JUDGMENT, PETITION FOR CANCELLATION OF TRADEMARKS, AND TO RECOVER DAMAGES UNDER RCW CH. 19.86 |

Plaintiff PBTM LLC for its complaint for declaratory relief and petition for cancellation of trademarks against FOOTBALL NORTHWEST LLC and NFL PROPERTIES LLC alleges as follows.

## I.      PARTIES

1.      Plaintiff PBTM LLC ("PBTM") is a Nevada limited liability company, with a principal business address of 415 Laurel Street # 109, San Diego, CA 92101.

2.      Defendant Football Northwest LLC ("Seahawks") is a Washington limited liability company, with a principal place of business at 12 Seahawks Way, Renton, WA.

3.      Defendant NFL Properties LLC ("NFLP") is a Delaware limited liability company, with its principal place of business at 345 Park Avenue, New York, NY 10154.

## II.      NATURE OF ACTION

4.      This action arose out of an Opposition filed by Defendants to Application No. 88477341 filed with the United States Patent and Trademark Office ("USPTO") by PBTM for a

trademark that is a different stylization of the V12 trademarks already owned by PBTM. (Exhibit A).

5.     This Opposition is the continuation of a pattern by the Defendants of harassment against legitimate owners of trademarks with some connection to the number "12" to obtain unfairly a monopoly on that number.[1]   PBTM has the lawful right to use this trademark and is entitled to issuance of a USPTO Trademark Registration. Therefore, PBTM seeks a declaration from this Court, pursuant to 15 U.S.C. § 1119, that PBTM has the right to registration of this mark, and to order the USPTO to issue it.

6.     PBTM also seeks the cancellation of the following five trademarks owned by the Seahawks (Registration Nos. 5084564,4692528, 4775754,4631412 and 4611448).   PBTM has rights superior to the Seahawks in these marks and the Seahawks' continued use of them causes damage to PBTM.  This petition for cancellation is filed within five years of the registration date for the first three marks.  15 U.S.C. § 1064 (1).

### III.     JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this dispute pursuant to 15 U.S.C. § 1119, 28 U.S.C. §§ 1331, 1338 (a) and (b).

8.     This Court also has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 as there is diversity of citizenship and the amount in controversy exceeds $75,000 exclusive of costs.

9.     Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391 (b) as a substantial part of the events giving rise to this dispute occurred within this judicial district and one defendant resides in this district pursuant to 28 U.S.C. §§ 1391 (c) and (d).

10.     This Court has personal jurisdiction over the Seahawks because this entity is a Washington limited liability company and has continuous and systematic business contacts here.

---

[1] *See* "Seattle Seahawks attempting to trademark the number 12, the word 'boom' and more" ABA Journal, January 23, 2015.
http://www.abajournal.com/news/article/seattle_seahawks_attempting_to_trademark_the_number_12_the_word_boom (last accessed on December 16, 2019).

COMPLAINT FOR DECLARATORY JUDGMENT
(NO. 19-cv-2081)

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA. 98203*

11.     This Court has personal jurisdiction over NFLP because this entity has continuous and systematic business contacts here.  NFLP represents the National Football League ("NFL") and its member clubs, including the Seahawks, for the licensing and protection of the Seahawks names, logos, symbols and other marks.  NFLP has engaged in this activity for the Seahawks repeatedly over the past several years.

## IV.     STATEMENT OF FACTS

*A.     The Trademarks at Issue.*

12.     <u>The Trademark Opposed by the Seahawks</u>.  The Defendants have filed an Opposition (Exhibit A hereto) to Application No. 88477341 filed with the USPTO by PBTM for this trademark: V12 VERIFIED, PROPERTY OF THE FANS. VERIFIED12.COM, U.S. Serial No. 88477341 representing goods/services of "Clothing, namely, T-shirts, polo shirts, casual shirts, pants, shorts, jackets; exercise clothing, namely, sweatpants, sweatshirts, leotards, tights, jerseys, wristbands, arm sleeves worn separate and apart from shirts or other tops; underwear, namely, briefs, thongs, G-strings, socks; sleepwear, namely, pajamas, lingerie; rainwear, namely, raincoats, ponchos, scarves, gloves and footwear  in International Class 25.

13.     <u>PBTM's "12" Trademarks</u>. PBTM is the lawful owner of six registered trademarks that incorporate the number "12":

  a.     V12 (word mark). Reg. No. 4,782, 146 issued on July 28, 2015 for Class 025, date of first use was April 15, 2015.

  b.     V12 (word mark) Reg. No. 4,786, 035 issued on August 4, 2015 for Class 25, date of first use was May 13, 2011.

  c.     VOLUME 12 (word mark) Reg. No. 4,601,724 issued on September 9, 2014 for Class 018, date of first use was October 1, 2013.

  d.     VOLUME 12 (word mark) Reg. No. 4,580, 384 issued on August 5, 2014 for Class 018, date of first use was May 26, 2011.

  e.     VOLUME 12  Reg.  No. 5,132,208 issued on August 5, 2017 for Class 041, first date of use was June 1, 2009

COMPLAINT FOR DECLARATORY JUDGMENT
(NO. 19-cv-2081)

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA. 98203*

f.      VOLUME 12 ⒓ Reg. No. 5,132,113 issued on August 5, 2017 for Class 024, first date of use was June 1, 2012.

g.      Exhibit B is the registration certificates from USPTO for the above-listed registrations.

14.     The Seahawks "12" Trademarks. The Opposition lists fifteen Seahawks trademarks ("Seahawks Trademarks") that use the number "12" that the Defendants claim would be diluted by the trademark at issue, although it states that PBTM's V12 designation is similar to **only** one mark (Exhibit A ¶ 21):

15.     Lack of Similarity between ten Seahawks Marks and the Mark at Issue.  A simple visual analysis of ten of the Seahawks Trademarks shows that ten of them are so different from the trademark at issue that there can be no likelihood of infringement, customer confusion or possible dilution because they contain different words, colors and stylizations and are for different classes of use. (Reg. Nos. 3341813, 3540842, 3633279, 4701098, 4773578, 4795923, 3304717, 3300096, 3413381, 5381264.)

16.     The remaining five Seahawks "12" marks.  The remaining five "12" Seahawks included in the Opposition are not superior to the trademark at issue.  Three of them (Reg. Nos. 4775754, 4631412, and 462248) depict a "12" in the same design as in PBTM's VOLUME 12 registered mark (Reg. No. 5,132,208) which has been used in commerce since 2009 with the Seahawks' knowledge and acquiescence.  The fourth mark is for a standard character of the number 12 (Reg. No. 5084564).  The application for this mark defines it as such with no defining font, color or characteristic. The fifteenth "12" mark (Reg. No. 4692528) matches the stylized 12 designed by the Seahawks graphic department at the request of Seahawks management and given to PBMT in 2012 for use on the PBMT VOLUME 12 flags and banners displayed in Qwest/ CenturyLink Field, the Seahawks stadium ("Stadium") throughout the 2012 season and subsequent seasons. In addition, the fifteenth "12" mark is similar to the "12" contained in a trademark application filed by PBTM in 2015 (Serial No.86568687). The Defendants filed an opposition to

this trademark with the USPTO but withdrew it and the opposition was canceled with prejudice by the USPTO.  The trademark at issue is identical to two PMBT registered trademarks.

17.     The trademark at issue consists of a stylized "V" that is accompanied by the language "verified property of the fans" and a version of a stylized number "12".  This effectively is identical to the V12 registered mark, Reg. Nos. 4,786, 035, owned by PBTM for the same class: 025 (clothing and other types of apparel). While the trademark at issue has minimally different design elements it contains the same two key components of these registered trademarks for the same intended use and conveys the same continuing commercial impression.

18.     The applications for the two registered V12 trademarks were submitted to the USPTO in 2011.  Neither defendant filed an opposition to these applications, which were granted in 2014.  The specimens submitted for them contain a stylized "12" in the block form style used by PBTM for its Volume 12 trademark (Reg. No. 5,132,208), which is only slightly varied in the "12" in the trademark at issue.

19.     The Opposition to the trademark at issue is based solely on the use and style of the number "12," which is the dominant feature shared with the prior registered marks.  Registration of the trademark at issue will not cause any additional harm to the Defendants than they would experience from PBTM's lawful use of the prior registered marks.

B.     ***PBTM has superior rights to the stylization and use of "12" in the Trademark at Issue.***

20.     <u>The Seahawks' history of "12" trademarks</u>. The Seahawks have known for many years that they cannot use the number "12" exclusively.  In 2006 the Seahawks fought, and lost, a battle with Texas A&M over that school's trademarked "12th Man" that uses a collegiate block style for "12."  At that time the Seahawks negotiated licensing agreements with the school for a limited right to use the trademark, but not in association with the sale of merchandise, which have been renewed. The most recent 2016 agreement called for the Seahawks to pay Texas A&M $140,000 up front and $28,000 annually until 2021 for the right to use "12th Man."  After the Seahawks' skirmish with Texas A&M, it sought and received trademark protection for only six marks that used "12" in some way in 2006-07.  Two were for "Spirit of 12". Three marks contained

exaggerated versions of "12" with different colors, with no resemblance to the "12" that PBTM used on their first VOLUME 12 products in 2009. The sixth contained "Bring on the 12".  None were for the class of use similar to the PBTM products introduced in 2009.  **The "12" used by PBTM first in commerce in 2009 in VOLUME 12 is identical to the "12" that the Seahawks first registered five years later, in 2014,** around the time the Seahawks entered into negotiations with PBTM over the sale of a different trademark. Around this time, the Seahawks registered the remaining "12" marks listed in the Opposition. In 2016, the Seahawks initially opposed "Hunger Games" author Suzanne Collins' efforts to trademark "District 12" with the USPTO but then withdrew its opposition.

21.    The Seahawks knowingly associated with and encouraged use of the VOLUME 12 trademark for the team's benefit since 2009.

*a)    **2009.***

In 2009 PBTM first produced products including rally towels, flags, banners and flyers with the Volume 12 mark as it appears in the trademark, Reg. No. 5132208, which is similar to the use of the 12 in the trademark at issue.  The Seahawks' blue and green colors were also used. PBTM also established the domain "volume12seatle.com" a FACEBOOK site, "VOLUME 12" and a VOLUME 12 twitter account. VOLUME 12's first use in commerce was June 1, 2009. PBTM's VOLUME 12 banners were displayed in numerous Seattle bars and restaurants during the 2009 season. More important, they were displayed prominently in the North End of the Seahawks stadium, Qwest/CenturyLink Field for every 2009 season home game. PBTM has photographic evidence that clearly shows that the Seahawks actively endorsed the Volume 12 flags and banners. Seahawk running back Justin Forsett carried the Volume 12 flag out of the tunnel and on to the playing field.  The Seahawks Organization attached a Volume 12 flag to a pole, which was used for pregame display. Seahawks players Matt Hasselbeck and Walter Jones and others were photographed holding VOLUME 12 towels.  Seahawks management were photographed holding VOLUME 12 flags and banners. At no time did the Seahawks object to VOLUME 12 as

an infringement on any Seahawk intellectual property rights, but genuinely created an association with VOLUME 12.

**b)**     **_2010_.**

In light of the VOLUME 12 support from the Seahawks, PBTM decided to expand its VOLUME 12 product line for use by other Seattle sports teams, including the Seattle Sounders, Mariners, Stealth and the University of Washington Huskies.  However, PBMT became more associated with the Seahawks when it developed a VOLUME 12 "noise meter" with this mark. PBTM presented it to the Seahawks, who loved it, because it helped the fans in a game to get so loud that it gave the Seahawks a home team advantage. VOLUME 12 banners continued to be hung in the north end of the stadium. The Seahawks told PBTM that VOLUME 12 would be prominently displayed on the jumbo screen whenever the team needed a boost while they were on defense from the ever-escalating crowd volume. Again, the Seahawks never objected to PBTM's use of its colors or the number "12" in VOLUME 12 during 2010 or claimed any infringement on existing "12" marks.

**c)**     **_2011_.**

In the first quarter of 2011, the Seahawks management told PBTM that they did not want other Seattle sports teams to be able to use VOLUME 12. The Seahawks and PBTM entered into a license agreement on June 7, 2011, that gave the Seahawks  the exclusive right to use VOLUME 12 on stationary, signage, video boards and LED within Qwest/CenturyLink Field; to promote and publicize VOLUME 12 "anywhere in the public domain" but only in conjunction with the sale of Seahawks jerseys. In return PBTM got the "opportunity to capitalize on the publicity created by the Seahawks use of the Mark." The agreement stated that "Licensor [PBTM] shall retain all other rights to the Mark not granted in this Agreement." Indeed, the Seahawks have conceded repeatedly that PBTM is the owner of the VOLUME 12 trademark.  The Seahawks explored producing "VOLUME 12" retail items but concluded that VOLUME 12 was most advantageous when displayed on banners and stadium jumbo-trons to increase crowd volume at key points to help the Seahawks on the field. The Seahawks offered to store and display the

COMPLAINT FOR DECLARATORY JUDGMENT
(NO. 19-cv-2081)

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA. 98203*

VOLUME 12 end zone banners for all future home games. PBTM agreed.  The Seahawks also signed a second agreement with PBMT that authorized PBTM to use the block profile 12 from the VOLUME 12 flags and banners, the term V 12 and the Seahawks iconic hawk and colors on the PBTM Facebook page.  Again, the Seahawks never objected to any use of "12" or the Seahawks colors by PBTM.

        *d)*    ***2012***.

        Even though PBTM made new banners for 2009, 2010 and 2011 the VOLUME 12 design remained the same.  In 2012, at the direction of Seahawks' management, the Seahawks' graphic department developed mockups for new VOLUME 12 banners and flags, with the Seahawks colors. The Seahawks presented this design to PBMT to be used on PBTM's flags and banners throughout the 2012 season. As with the previous three years, the flags and banners were displayed prominently throughout the Seahawks' stadium and the Seahawks never complained about PBTM's use of the chosen design and Seahawks colors. Even though the Seahawks obtained a trademark for this design (Reg. No. 4692528) in 2015, the Seahawks never claimed that PBTM's use infringed upon their intellectual property rights in this particular mark until it filed the Opposition in 2019.

        *e)*    ***2013***.

        In June of 2013 PBTM opened the VOLUME 12 commercial store to sell Seahawks- themed products in the Redmond Town Center. Many Seahawks players and others associated with the Seahawks store visited the VOLUME 12 store. Twice in 2013 the Seahawks fans broke the Guinness World Record for the loudest crowd roar at a sports stadium, with the assistance of PBTM, the VOLUME 12 noise meter and VOLUME 12 flags and banners. Throughout the 2013 season the VOLUME 12 mark was used more by the Seahawks than in the prior four seasons.  The Seahawks won the Super Bowl in 2014, based upon the 2013 season. As with the previous four years, the Seahawks never protested in any way PBTM's use of VOLUME 12 or claimed that PBTM was infringing on any Seahawk intellectual property,  with knowledge of the VOLUME 12 store and PBTM's involvement in obtaining  the Guinness World Record .

*f)* __2014.__

The Seahawks continued to use VOLUME 12 in the stadium. Seahawks management approached PBTM about purchasing VOLUME 12 but decided not to when PBTM told them they needed a price of at least $400,000 to recoup their costs in developing the mark. However, Seahawks management decided to purchase another mark owned by PBTM, LEGION OF BOOM. The Seahawks prepared several drafts of a "Purchase Agreement" for the sale of the LEGION OF BOOM mark.  Initial drafts addressed only LEGION OF BOOM. The Seahawks prepared later drafts that inserted a clause about VOLUME 12, even though the subject of the entire agreement involved LEGION OF BOOM.  This clause (¶ 22) forbids PBTM from offering or marketing goods or services using VOLUME 12 **in connection with any other team or sport other than the Seahawks.** It also requires PBTM to get Seahawks' permission before "producing, advertising and/or selling or otherwise distributing any product featuring a trademark that incorporates "12".  The preceding clause (¶ 21) contained the same requirement for the trademark BOOM NATION, except that is was "not mandatory" for PBTM to get such permission.

PBTM demanded that both clauses have the same "not mandatory" condition and assumed that the final version contained this language.  PBTM signed this agreement but they saw shortly thereafter that both clauses did not contain the "not mandatory" language. PBTM protested and asked repeatedly to have the "not mandatory language" restored to ¶ 22, but the Seahawks have refused to do so. The Seahawks continued to use VOLUME 12 in the stadium, as in past years.  PBTM obtained two trademarks for VOLUME 12 in 2014: Reg. No. 4,601,724 issued on September 9, 2014 for Class 018 and Reg. No. 4,580, 384 issued on August 5, 2014 for Class 016.

*g)* __2015.__

PBTM obtained two trademarks for V12: Reg. No. 4,782,146 issued on July 28, 2015 and Reg. No. 4786035, issued on August 4, 2015 both for Class 25. The Defendants did not oppose issuance of those trademarks but did oppose trademark applications for a stylized VOLUME 12 and TURN THE VOLUME UP TO 12 (Serial Nos. 86568687 and 86722219) stating the same reasons as in their opposition to the trademark at issue in this case. The stylization of the

COMPLAINT FOR DECLARATORY JUDGMENT
(NO. 19-cv-2081)

*Endejan Law, LLC*
*5109 23ʳᵈ Ave. W*
*Everett, WA. 98203*

"12" is identical in the 2015 application and the trademark at issue. On December 19, 2015 the Defendants withdrew the oppositions to Serial Nos. 86568687 and 86722219 and the Trademark and Appeal Board **dismissed the opposition with prejudice**. PBTM abandoned their applications for Serial Nos. 86568687 and 86722219 but filed applications for different versions of VOLUME 12, on May 8, 2016, which were granted on August 5, 2017. (Reg. No. 5,132,113 for Class 12 and Reg. No. 5,132,208 for Class 041). The Defendants did not file oppositions to these applications.

       *h)*     *2015-2019*.

Despite the fact PBTM objected to, and still objects to, the requirement to obtain permission to use its own trademark, VOLUME 12, PBTM has requested such permission from the Seahawks on four occasions. All requests have been refused by the Seahawks, which continued to use VOLUME 12 in the stadium at least through 2017. The Seahawks have always admitted that PBTM owns the VOLUME 12 trademark.

## V.    CAUSES OF ACTION

### COUNT ONE
### Request for Declaratory Relief Dismissing Opposition

22.    PBMT incorporates the allegations of paragraphs 1-21.

23.    PBMT seeks declarations pursuant to 28 U.S.C. § 2201 and 15 U.S.C. § 1119 that PBMT is the owner of the trademark at issue (Serial No. 88477341) and it is entitled to use of that trademark.

24.    PBMT seeks declarations pursuant to 28 U.S.C. § 2201 and 15 U.S.C. § 1119 that the Defendants' Opposition to registration of the trademark at issue is barred by the doctrines of prior registration, estoppel by acquiescence, estoppel by laches, estoppel by license and unclean hands.

25.    PBMT seeks a declaration pursuant to 28 U.S.C. § 2201 and 15 U.S.C. § 1119 that PBMT is entitled to issuance of a U.S. Trademark for the trademark at issue (Serial No. 88477341) from the USPTO.

**COUNT TWO:**
**Request for Declaratory Relief Cancelling Seahawks' Trademarks**

26.     PBMT incorporates the allegations of paragraphs 1-25.

27.     PBMT seeks declarations pursuant to 28 U.S.C. § 2201 and 15 U.S.C. § 1119 that five trademarks owned by the Seahawks (Registration Nos. 5084564, 4692528, 4775754, 4631412 and 4611448) should be cancelled.

28.     Seahawks Trademarks Registration Nos. 5084564, 4692528, 4775754, 4631412 and 4611448 should  be cancelled on the basis that PBMT has priority in use of these marks and any claim by the Seahawks to the contrary is barred by the doctrines of prior registration, estoppel by acquiescence, estoppel by laches, estoppel by license and unclean hands.

29.     In order to be protectable, a purported trademark must be used in a manner that would be perceived by purchasers as identifying and distinguishing the source of the goods recited in the application or registration from the goods of others.

30.     A purported mark that is ornamental does not and cannot function as a trademark.

31.     A slogan that lacks distinctiveness does not and cannot function as a trademark.

32.     Defendants' slogans and numbers emblazoned in letters on the back or front of a t-shirt serves as ornamentation and does not and cannot function as a trademark.

33.     Defendants' Marks do not and cannot identify and distinguish the source of Defendants' goods as recited in its trademark applications and registrations from the goods of others.

34.     Defendants should not have been issued the registrations for Seahawks Marks in light of the their failure to function as trademarks, and now Defendants are using those improperly-issued registration to harm PBTM.

35.     PBTM will be harmed unless Seahawks Marks are cancelled.

36.     By reason of the foregoing, Seahawks Marks fail to function as trademarks and should be cancelled from the Federal Register.

COMPLAINT FOR DECLARATORY JUDGMENT
(NO. 19-cv-2081)

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA. 98203*

## COUNT THREE:
### Request for Injunctive Relief

37.     PBMT incorporates the allegations of paragraphs 1-36.

38.     PBMT seeks an injunction pursuant to 15 U.S.C. § 1116 ordering the USPTO to grant a U.S. Trademark to PMBT for the trademark at issue (Serial No. 88477341).

39.     PBMT seeks an injunction pursuant to 15 U.S.C. § 1116 ordering the USPTO to cancel the following trademarks: Registration Nos. 5084564, 4692528, 4775754, 4631412 and 4611448.

40.     PBMT seeks an injunction pursuant to 15 U.S.C. § 1116 ordering the Defendants to cease and desist from use of the following trademarks: Registration Nos. 5084564, 4692528, 4775754, 4631412 and 4611448.

## COUNT FOUR:
### Unfair Competition

41.     PBMT incorporates the allegations of paragraphs 1-40.

42.     Defendants' conduct as alleged herein constitutes an unfair or deceptive practice in trade in violation of Washington's Consumer Protection Act, RCW 19.86.10 *et. seq.*

43.     PBMT has lawfully placed PBMT trademarks in commerce since 2009 in the ordinary course of trade.

44.     Defendants have used their registered trademarks including the number 12 in commerce in the ordinary course of trade for Defendants' economic benefit.

45.     Defendants' conduct as alleged herein is an unlawful monopolization or attempt to monopolize the commercial use of the number 12 in violation of RCW 19.86.040.

46.     RCW 19.86 040's title states, "Monopolies and attempted monopolies declared unlawful."

47.     Defendants conduct has injured PBMT and has the capacity to injure other persons.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**PRAYER FOR RELIEF**

Wherefore, plaintiff PMBT requests the following relief from this Court:

A.    Declaratory relief as set forth in Count One under 15 U.S.C. § 1119.

B.    The cancellation of Defendants' trademarks as set forth in Count Two under 15 U.S.C. § 1119.

C.    Injunctive relief as set forth in Count Three under 15 U.S.C. § 1116.

D.    Damages for unfair competition under Washington's Consumer Protection Act, RCW 19.86.10 *et. seq.*

E.    Attorney's fees allowed by law, including but not limited to RCW 1986.090.

F.    Treble damages for unlawful monopolization under RCW 19.86.090.

G.    Such other further relief as the Court may deem just and proper.


DATE:  December 23, 2019

Respectfully submitted,

ENDEJAN LAW LLC

*  s/Judith A. Endejan*
Judith A Endejan
5109 23rd Avenue West
Everett, WA. 98203
Ph: 206-799-4843
Email: jendejan@gmail.com


VERNA LAW PC

*  s/Anthony M. Verna III*
Anthony M Verna III*
80 Theodore Fremd Avenue
Rye, NY 10580
Ph: 914-908-6757
Email: anthony@vernalaw.com
*Pro Hac Vice pending*

*Attorneys for Plaintiff*

COMPLAINT FOR DECLARATORY JUDGMENT
(NO. 19-cv-2081)

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA. 98203*