HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PBTM, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>FOOTBALL NORTHWEST LLC and NFL PROPERTIES LLC,<br><br>Defendants. | No. 2:19-cv-02081-RSM<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOURTH AMENDED COMPLAINT<br><br>MOTION CALENDAR: 4/16/2021 |

## I. INTRODUCTION

In their newest motions to dismiss Defendant Football Northwest, LLC ("FNW" or "Seahawks") and NFL Properties LLC ("NFLP") confuse issues related to PBTM's existing registered trademarks[1] ("Existing TMs") and those that gave rise to this litigation—the six PBTM trademarks pending registration ("Pending TMs") at the Trademark Trial and Appeal Board of the United States Patent and Trademark Office ("USPTO" or "TTAB").[2] For the latter category, both defendants concede[3] that PBTM has the legal right to have the registrability of the Pending TMs determined, but they do not want this Court to make that determination. This legal determination does not depend on the viability of the reformation claim dismissed by this Court in its Order Re: Defendants' Motions to Dismiss and Plaintiff's Motion for Leave to

---

[1] Dkt. 47 ¶ 16.

[2] Dkt. 47 ¶¶ 18-20.

[3] NFLP admits that "PBTM has the right to pursue its trademark registrability claim." Dkt. 48, p.2, l.15. FNW concedes this point by arguing that the USPTO should determine the registrability of the Pending TMs. Dkt,49, p. 8.

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA. 98203*

Amend ("Order") Dkt. 46. The issue of trademark registrability is not related to the 2014 Agreement between FNW[4] and Plaintiff but depends solely upon resolution of independent questions arising under federal trademark law, 15 U.S.C. §§ 1051 *et seq*. The Order provided PBTM with the opportunity to explain this point, and the Fourth Amended Complaint ("FAC") re-states Counts One to request declaratory relief for its Pending TMs.

The remaining counts in the FAC involve PBTM's Existing TMs and they raise claims within this Court's clear jurisdiction for antitrust violations and trademark infringement, which cannot be handled at the USPTO. They also state viable claims for relief and should not be dismissed.

## II. FACTUAL BACKGROUND

PBTM accepts this Court's recitation of the facts in the Order as providing the background for this case and will not repeat them herein. However, the FAC adds some additional facts; namely, the five additional Oppositions filed by defendants at the USPTO after the filing of the Third Amended Complaint which provide further proof that PBTM has a real and reasonable apprehension that they will be subject to liability from Defendants. The FAC also added a new definition of "market" for Counts Four through Seven.

## III.   ARGUMENT

**A.   Under Applicable Legal Standards, The Motions to Dismiss Should Be Denied.**

A complaint in federal court need not include detail—only a "'short and plain statement' . . . that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant County Narcotics Intelligence Coordination Unit, et al.*, 507 U.S. 163, 168 (1993) (quoting Fed.R.Civ.P. 8(a)). The FAC, with 64 paragraphs, on 29

---

[4] The 2014 Agreement is at Dkt. 25-2. FNW inaccurately characterizes PBTM's claims here as nothing but an attempt to evade its duties under the 2014 Agreement, Dkt. 49, p. 1. Nothing in the FAC requests any relief from that agreement but seeks declarations that the Pending TMs can become registered, certain Seahawks' trademarks should be cancelled and the 2011 Agreement is of no effect.

OPPOSITION TO MOTIONS TO DISMISS FOURTH
AMENDED COMPLAINT – 2
No. 2:19-cv-02081-RSM

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA. 98203*

pages, clearly meets the requirements of Rule 8, providing more than enough facts to give fair notice of PBTM's claims against Defendants.[5]

The FAC also meets the Fed.R.Civ.P. 12(b)(6)  standard, that "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To have facial plausibility, a complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This analysis is "context-specific" and is driven by "judicial experience and common sense." *Id.* at 679.

Dismissal under Fed.R.Civ.P. 12(b)(6) is disfavored, and motions to dismiss are rarely granted. *Gilligan v. Jamco Development Corp.*, 108 F. 3d 246, 249 (9th Cir. 1997). When they are granted by trial courts, they are frequently overturned on appeal. *See, e.g., Hishon v. King Spalding*, 467 U.S. 69, 73 (1984); *Van Buskirk v. CNN, Inc.*, 284 F. 3d 977, 980 (9th Cir. 2002); *Rhoades v. Avon Products, Inc.*, 504 F. 3d 1151, 1166 (9th Cir. 2007).

In *Hishon*, the Supreme Court explained that "[t]he question presented is not whether the plaintiff will ultimately prevail; rather, it is whether the plaintiff could prove any set of facts in support of her claim that would entitle her to relief." That is why "[a] complaint should not be dismissed unless it appears *beyond doubt* that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Van Buskirk* at 980 (emphasis supplied). The court's factual analysis must accept a plaintiff's factual allegations as true and draw all reasonable inferences in the light most favorable to the nonmoving party. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).

---

[5] FNW implies that the number of complaints filed by PBTM is somehow an indication of the weakness of PBTM's claims. Dkt. 49, pp.1, 2. This implication is unfair and should be disregarded by the Court. The second amended complaint was due to the discovery of jurisdictional facts about defendant NFLP *after the initial complaint was filed*. The defendants did not bring up their other "concerns" about the initial complaint until they requested several meet-and-confer conferences after the Second Amended Complaint was filed. The third amended complaint was prepared and filed as a good faith attempt to address these "concerns" in multiple, lengthy meet-and-confer conferences held for the purpose of obviating motions to dismiss. PBTM's next request to file an amended complaint was due to the NFLP's filing of additional oppositions at the USPTO to PBTM's Pending TMs *after the Third Amended Complaint was filed*.

OPPOSITION TO MOTIONS TO DISMISS FOURTH
AMENDED COMPLAINT  – 3
No. 2:19-cv-02081-RSM

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA. 98203*

**B.      This Court Has Jurisdiction Over This Case.**

*1.      Defendants Have Asserted Infringement Claims Against PBTM.*

Inexplicably and illogically, FNW argues that there can be no "case or controversy" without a threat of infringement, which would only be possible if PBTM was actually "using" the trademarks in commerce. Yet, defendants have lodged just such infringement claims against the Pending TMs in six Oppositions at the USPTO, which make identical claims. Dkt. 26, Ex. A; Dkt. 47, n. 3. Each alleges the elements of trademark infringement under the Lanham Act, claiming that: (1) the FNW marks are valid and legally protectable; (2) they own the marks; and (3) PBTM's unauthorized use of the Pending TMs are likely to cause confusion. *See Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (citation omitted). The Oppositions do not allege actual *use* of the Pending TMs as a prerequisite to their infringement claims.

Likelihood of confusion "is the central element of trademark infringement." *GoTo.Com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000). Each Opposition alleges potential customer confusion *if* the Pending TMs were to be used and uses the term "when" to indicate the future.

> Opposers believe they will be damaged by registration of Applicant's V-12 [and the other five Pending TMs] Designation under Section 13 of the Lanham Act, 15 U.S.C. § 1063, on the ground that the subject designation so resembles Opposers' 12 Marks used by Opposers in the United States as to be likely, *when* used or in conjunction with the goods identified in the application for Applicant's V 12 Designation, *to cause confusion, mistake or to deceive customers* with consequent injury to Opposers and to the public, in violation of Section 2(d) of the Lanham Act, 15 U.S.C. § 1052 (d).) (Emphasis supplied.)

By creating issues of trademark infringement in the first place the defendants have created the very "case or controversy" they erroneously claim does not exist.

*2.      The FAC Pleads A Justiciable Controversy Over the Pending TMs.*

FNW's inaccurately characterizes (Dkt. 49, p.4) PBTM's trademark claims here as nothing but an attempt to evade PBTM's duties under the 2014 Agreement, which has nothing to do with this Court's jurisdiction to resolve a trademark dispute over the Pending TMs.

OPPOSITION TO MOTIONS TO DISMISS FOURTH
AMENDED COMPLAINT – 4
No. 2:19-cv-02081-RSM

*Endejan Law, LLC
5109 23rd Ave. W
Everett, WA. 98203*

Nothing in the 2014 Agreement prohibits PBTM from filing trademark applications. Thus, PBTM's filings do not require consent, so PBTM cannot be evading any contractual duty. Indeed, Defendants have not opposed the actual grant of several trademarks to PBTM since the 2014 Agreement. Dkt. 47 ¶¶ 23-25. In their filed Oppositions, Defendants never mention the 2014 Agreement. Because the 2014 Agreement's duties are unrelated to the registrability of the Pending TMs, that agreement is no impediment to PBTM's request in Counts One and Two.

FNW repeats, almost verbatim,[6] its first unsuccessful motion to dismiss contesting this Court's jurisdiction. FNW hopelessly muddles trademark principles, confusing those that govern different types of registration. For instance, FNW cites a case[7] and statute claiming that "use in commerce" is necessary for this Court to have jurisdiction, but this specific criterion applies in 15 U.S.C. § 1051(a)(1) registration filings—not to intent-to-use filings under 15 U.S.C. § 1051(b)(1), like the Pending TMs. Two types of trademark applications are provided for in 15 U.S.C. § 1051: the first, (15 U.S.C. § 1051(a)(1)), governs applications for trademarks "used in commerce" and the second (15 U.S.C. § 1051(b)(1)) applies to applications where the filer states an "intention" to use the trademark in the future. According to FNW, 15 U.S.C. § 1051(a)(1) applicants could seek declaratory relief from a federal court when faced with Oppositions alleging trademark infringement but could not do so if they are 15 U.S.C. § 1051(b)(1) applicants. No sound statutory interpretation or legal authority supports such an absurd result. Indeed, several trademark declaratory judgment cases involve intent-to-use applications, including *Rhodes v. Avon Products, Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007), and *Whole E Nature, LLC v. Wonderful Co., LLC*, No. 17cv10-LAB(KSC), 2017 U.S. Dist. LEXIS 155554 at *2-3 (S.D. Cal. Sept. 22, 2017). Further, the Lanham Act declares that "the filing of the application to register such mark shall constitute constructive *use* of the mark." 15 U.S.C.

---

[6] Dkt. 30, pp. 8-12; Dkt. 35, pp. 2-5.

[7] *Rexel, Inc. v. Rexel Int''l Trading Corp.,* 540 F. Supp. 2d 1154, 1161(C.D. CA. 2008) (the court clearly had jurisdiction to hear the case as an actual substantive infringement case—not a declaratory judgment action).

OPPOSITION TO MOTIONS TO DISMISS FOURTH
AMENDED COMPLAINT  – 5
No. 2:19-cv-02081-RSM

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA. 98203*

§ 1057(c). Thus,  PBTM's Pending TMs are in "use," annihilating FNW's claim that this Court lacks jurisdiction because these trademarks are not in "use".

FNW further confuses *PBTM's* claim in  Count Eight  for trademark infringement discussed in Section ___ with *Defendants'* claims of trademark infringement discussed above, claiming illogically that jurisdiction does not exist because a) the Seahawks cannot claim trademark infringement because PBTM has no products in use; b) therefore, PBTM cannot be concerned about being sued for infringement; and c) the Court can only rule on a trademark registration "when infringement is also an issue." Dkt. 49, p.8, l.18. ***Yet, Defendants have made infringement an issue by their Oppositions***, giving rise to PBTM's "reasonable apprehension" that they will be sued, thereby conceding that this Court does have jurisdiction.

*Rhodes v. Avon Products, Inc.*, 504 F. 3d 1151 (9th Cir. 2007) is the leading case that establishes the standard for whether a "case or controversy" exists for jurisdiction over trademark declaratory judgment cases, such as this. "[A] case or controversy [exists] if the plaintiff has a real and reasonable apprehension that he will be subject to liability if he continues to manufacture his product." *Id*. at 1157.

Contrary to FNW's claim, *Rhodes* did not involve a challenge to existing products in the market but to trademark applications filed on an intent-to-use basis with a statement that they were not in use, like the Pending TMs.[8] In that case, Avon, like Defendants, contested these applications by filing oppositions with the USPTO. Without any analysis about the plaintiff's "use" of the trademarks in question, the Ninth Circuit focused on the "real and reasonable apprehension" criteria, finding this to be satisfied: "Avon allegedly made three concrete threats of infringement litigation, but it did so on the heels of years of unsuccessful and tense settlement negotiations, and after Avon initiated seven actions at the TTAB." *Id.* at 1158.

---

[8] These were identified by the court in *Rhodes* at 1155; DermaNewInstitute (U.S. Serial Nos. 76479057); If It Is Not DermaNew It Is Not Personal Microdermabrasion (U.S. Serial Nos. 76490037, 76490033); DermaNew (U.S. Serial Nos 75797335,74436697); DermaNew Palm Microbrasion System (U.S. Serial No. 76426003).

OPPOSITION TO MOTIONS TO DISMISS FOURTH
AMENDED COMPLAINT  – 6
No. 2:19-cv-02081-RSM

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA. 98203*

In *Rhodes*, the Ninth Circuit expressly rejected FNW's argument[9] that TTAB proceedings do not themselves create a reasonable apprehension of an infringement lawsuit for declaratory judgment purposes, relying on *Chesebrough-Ponds, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir. 1982). *Id.* at n.8. *Chesebrough* also dealt with a trademark not yet brought to market challenged by opposition proceedings at the TTAB, where the Ninth Circuit found that a justiciable controversy existed under the "reasonable apprehension" standard. The Ninth Circuit said that application of this standard requires "a flexible approach that is oriented to the reasonable perceptions of the plaintiff." *Id.* at 396. Because Faberge wrote a letter stating its intent to file opposition proceedings alleging a *prima facie* case for trademark infringement and an opposition at the TTAB, the court in *Chesebrough* found that the plaintiff met the "reasonable apprehension standard." When *only* oppositions or cancellation proceedings alleging trademark infringement are filed with the TTAB, courts within the Ninth Circuit have found this standard met. In *San Diego Credit Union v. Citizens Equity First Credit Union*, 344 F.Supp. 3d 1147, 1158 (S.D. Cal. 2018) the court found the "reasonable apprehension" test met by the defendant's filing of one cancellation proceeding alleging trademark infringement at the USPOT. *Accord Copasetic Clothing Ltd. v. Roots Canada Corp.*, 2018 U.S. Dist. LEXIS 144575 at *4 (S.D. Cal. Aug. 24, 2018) ("DJA jurisdiction may lie—based on the allegations contained in TTAB materials alone—where the defendant's opposition articulates the prima facie elements of trademark infringement."); *Whole E Nature, LLC v. Wonderful Co.*, LLC, 2017 U.S. Dist. LEXIS 155554 at *2-3 (S.D. Cal. Sept. 22, 2017) (One opposition filed with USPTO asserting infringement allegations sufficient to show the plaintiff had a reasonable apprehension of litigation); *FN Cellars, LLC v. Union Wine Co.*, 2015 U.S. Dist. LEXIS 117256 at *3 (N.D. Cal. Sept. 1, 2015) (pre-lawsuit letter laying out the elements of a potential infringement action and threatening that if the mark was not abandoned, it would file a cancellation proceeding were sufficient to establish existence of an actual and justiciable

---

[9] FNW cites (Dkt. 49, p.6) four cases in support of this rejected proposition from outside the Ninth Circuit and they have no relevance to the analysis required.

OPPOSITION TO MOTIONS TO DISMISS FOURTH
AMENDED COMPLAINT – 7
No. 2:19-cv-02081-RSM

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA. 98203*

controversy and subsequent cancellation action invoking trademark infringement and dilution language further supported jurisdiction); *Mauro Pet Care v. Natural Dog Acquisition*, 2020 U.S. Dist. LEXIS 190385 (C.D.Ca. Aug. 21, 2020) (jurisdiction found, applying *Rhodes* test); *Neilmed Prods., Inc. v. Med-Systems Inc.*, 472 F.Supp. 2d 1178, 1180-82 (N.D. Cal. 2007) (defendant's notice of opposition that laid out elements of an infringement claim satisfied the actual controversy requirement because such actions could give the plaintiff a reasonable apprehension of liability). In *Neilmed*, the district court rejected the defendant's argument that a mere filing of a notice of opposition to a trademark registration application with the PTO does not provide grounds for the plaintiff to have a reasonable apprehension of litigation. 472 F.Supp. at 1180-81. The court explained that the defendant's notice of opposition "invoked the language of trademark infringement and dilution, which could give Plaintiff a reasonable apprehension that Defendant will sue Plaintiff if Plaintiff continues to use its [mark]." *Id.* at 1181.

Contrary to NFW's representation (Dkt. 49, p.7) that the court in *Homie Gear, Inc. v. Lanceberg Holdings, LLC*, 2016 U.S. Dist. LEXIS 159750 (S.D. Cal. Nov. 16, 2016), declined jurisdiction, the court *accepted* jurisdiction for a declaratory action in a trademark dispute where the plaintiff proved "reasonable apprehension" based upon a cease and desist letter stating the elements of trademark infringement and the filing of an opposition at the TTAB.

None of the rulings in the foregoing cases depended in any way upon the plaintiff's "use" of the trademark at issue but determined jurisdiction based upon the well-settled "reasonable apprehension" standard in *Rhodes*. Under that standard, PBTM has more than alleged factually why they had, and have, a "real and reasonable apprehension" that they will be subject to liability from Defendants. If the filing of only ONE opposition alleging trademark infringement[10] can provide this apprehension, then SIX such oppositions solidify this

---

[10] *Whole E Nature, LLC, supra.*

OPPOSITION TO MOTIONS TO DISMISS FOURTH
AMENDED COMPLAINT – 8
No. 2:19-cv-02081-RSM

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA. 98203*

apprehension. The facts stated in the FAC, Dkt. 47, ¶¶ 14-22, which must be taken as true, support the reasonableness of PBTM's apprehension:

- Defendants have consistently threatened PBTM with letters alleging "infringement" over any use of "12"-related trademarks. Dkt. 47, ¶ 14.

- In 2015 and 2016 NFLP filed oppositions to PBTM proposed trademarks alleging the same infringement claims contained in the SIX current oppositions. Dkt. 47, ¶¶ 14-15.

- The "settlement" demands, and unsuccessful settlement discussions, show that NFW intended to play "hardball" and would use whatever means possible to prevent PBTM from using any "12"-related marks in association with the Seahawks. Dkt. 47, ¶¶ 14.

- The six most recent oppositions alleging infringement. Dkt. 47, ¶¶ 18-21.

- The combined adverse positions taken in this litigation by these litigious defendants demonstrates they will sue PBTM should it use any of the Pending TMs in association with the Seahawks without their consent.

Defendants minimize these factors in a feeble and futile attempt to disregard how PBTM perceives their actions, which is the vantage point from which this Court must rule. Whether some of these actions involved other trademarks is irrelevant; they establish the adverse legal interests and litigious relationship between the parties, enhanced by the claims of infringement in the six new oppositions that firmly show why PBTM has a reasonable fear of future litigation from Defendants and why a justiciable "case or controversy" exists here.

**C.    This Court Should Exercise Jurisdiction in This Case.**

In all of the cases discussed in Section III.B., the courts found jurisdiction to hear the trademark disputes AND they accepted the jurisdiction to do so. The Ninth Circuit has identified prudential factors that courts should consider in determining whether to exercise jurisdiction, which favor acceptance here.

In *Gov't Employees Ins. Co. v. Dizol*, 133 F. 3d 1220,1225 (9th Cir. 1998), the court said that district courts "should avoid needless determination of State law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA. 98203*

avoid duplicative litigation."[11] Here, most of the issues are primarily federal in nature, involving trademark and antitrust law. Second, this Court is as competent as the USPTO to resolve the issue of the registrability of the Pending TMs. That is why Congress permits an initial proceeding in the district court over trademark disputes, even without prior resort to the USPTO under 15 U.S.C. § 1119.  *Rhodes,* 504 F. 3d  at 1163-64. When a case includes claims over which the USPTO has no jurisdiction, such as FNW's infringement[12], breach of contract and antitrust claims, judicial economy and fairness require resolution of these issues in one forum. If PBTM was required to litigate the registrability issue alone before the USPOT, duplicative litigation would result because the USPTO's decision can be litigated afresh under 15 U.S.C. § 1071(b), with no deference required to the decision of the administrative agency. Because this Court can address all aspects of the litigation and resolve all issues in this case, it makes sense to do so, particularly when the six opposition proceedings have been stayed in their earliest stages. In a similar case, the court accepted jurisdiction because  it "likely will settle all aspects of the controversy." *Active Sports Lifestyle USA, LLC v. Old Navy,* 2012 U.S. Dist. LEXIS 103273 (C.D.Cal. 2012)*2.  Otherwise, wasteful, duplicative litigation that resolves only part of the controversy would happen. *See San Diego Credit Union v. Citizens Equity First Credit Union*, 344 F.Supp. 3d 1147, 1158-59 (S.D. Cal. 2018). The "deciding factor" in accepting jurisdiction "[s]hould be efficiency." *Rhodes*, 504 F. 3d at 1165.

Another practical, cogent reason favors exercising jurisdiction. Having judicial resolution on all  inter-related issues would allow the parties to conduct their business without

---

[11] NFLP cites *Rolex Watch U.S.A., Inc. v. PRL USA Holdings, Inc.*, 114 U.S.P.Q. 1705, 2015 U.S. Dist. LEXIS 54765 (S.D.N.Y. 2015), for the broad proposition that a court should not exercise jurisdiction until the court knows how PBTM would use the Pending TMs. *Rolex does not contain parallel facts to this case  and has  a different procedural posture* This is a variation on the "use" argument that fails as discussed in Section III.B.2. and should be rejected. PBTM's plan to use the Pending TMs to make, market and sell the products and services are evident from the products listed in their applications and as described in ¶¶.of the FAC. The basis for rejecting jurisdiction in *Rolex* seems arbitrary and does not follow the guidance for discretionary acceptance of jurisdiction of the Ninth Circuit or all of the cases cited in Section III.B.2. where jurisdiction was accepted in a trademark declaratory judgment action like this.

[12] "[T]he TTAB's jurisdiction is limited to registration issues," and it cannot award damages for infringement. *Bd. of Trs. of the Leland Stanford Junior Univ. v. Stanford Fin. Group Co.*, 2002 U.S. Dist. LEXIS 147352 (N.D. Cal. Feb. 6, 2009)  *5.

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA. 98203*

risk "in accordance with the court's determination of its rights." *Rhodes*, 504 F.3d at 1164. *See also Classic Liquor Importers Ltd v. Spirits Int'l B.V.,* 151 F. Supp. 3d 451,456 (S.D. N.Y.2015).

PBTM is not forum shopping. In *Cellars, LLC v. Union Wine Co*, 2015 U.S. Dist. LEXIS 117256 (N.D. Cal. Sept. 1, 2015) *3 the Court dismissed such a claim in a trademark declaratory judgment action:[13] "[F]iling a declaratory action in this district does not amount to forum-shopping, especially when it is the actions of defendant [like the defendants here] that created federal court jurisdiction in the first place."

The *McCarthy Trademarks* treatise concurs:

> [I]f the declaratory plaintiff has in fact been threatened with litigation for infringement…it should be allowed to bring an action for declaratory judgment to determine non-infringement and join it with a claim of invalidity of the mark and a prayer for cancellation of the declaratory defendant's federal registration.

6 *McCarthy* § 32:55. Accepting jurisdiction in this case would be the most efficient way to revolve the controversy between the parties. Thus, this Court can, and should, entertain and resolve Counts One and Two (cancellation) in the FAC.[14]

**D.   The FAC States a Cause of Action for Breach of the Duty of Good Faith and Fair Dealing.**

This Court's Order allowed PBTM to amend its complaint to allege breach of the duty of good faith and fair dealing for claims arising after December 23, 2016. Dkt. 46, pp. 15, 35-36. Thus, the Court has already rejected FNWs argument (Dkt. 49, pp. 9-12) that no such breach was possible on the basis that the 2014 Agreement imposed no duty on the Seahawks to consent to PBTM's use of their "12 marks" on products, or the Court would not have allowed PBTM to amend its complaint.

---

[13] Accord, *Whole E Nature, LLC v. Wonderful Co., LLC, supra.*

[14] NFLP improperly raises (Dkt. 48, p.24-25) substantive defenses to the cancellation claim, which are irrelevant to this jurisdictional determination, based on the false premise that this claim is independent from an infringement claim which is not in this case. NFLP ignores the fact that FNW has placed infringement *front and center* in this case,  so according to the authority cited by NFLP, this court *should* entertain the claims in Counts One and Two.

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA. 98203*

Even if FNW may have no duty to consent under the contract, this does not mean that FNW did not breach its duty of good faith and fair dealing. FNW's current motion misstates the meaning and purpose of this duty and ignores the *full* language in Paragraph 22 of the 2014 Agreement, which provides the basis for the duty of good faith and fair dealing.[15] Paragraph 22 *in toto* has two key parts:

> (1) Given FBNW's rights and interest in the trademark 12, VOLUME 12 will not offer or market goods or services under the trademark "VOLUME 12" or any other mark containing 12 or "TWELVE" to or in connection with *any other sport other than Seattle Seahawks football*. (2) Further, VOLUME 12 LLC shall seek and obtain prior written approval of FBMW before producing, advertising and/or selling or otherwise distributing any product featuring a trademark that incorporates "12." (emphasis supplied).

While NW completely ignores the first sentence, this Court cannot do so. Courts must construe contracts as a whole to effectuate all of the contract's provisions, so as not to render words superfluous. *See Colorado Structures, Inc. v. Ins. Co. of the West*, 161 Wn. 2d 577, 588, 167 P.3d 1125 (2007). The first and second sentences, read together, reinforce the agreed-upon association between PBTM and Seahawks products, first formally recognized in the 2011 Agreement and  provide FNW control over  PBTM's VOLUME 12 by requiring its usage *only* for  Seahawks-related products. The first sentence acknowledges that the FNW knew that PBTM made and offered only VOLUME 12 Seahawks products and that they intended for this situation to continue into the future (i.e., by use of the term "will"). Thus, the Seahawks' approval rights were conditioned on the understanding and expectations that they only applied to PBTM's VOLUME 12 products associated with the Seahawks. An interpretation that removes this condition and allows the Seahawks to withhold approval *because of the very association mandated by the first sentence in Paragraph 22* violates the intent and expectations of the parties when entering the contract and leads to an absurd, unreasonable result. The first

---

[15] The cases cited by FNW do not deal with the situation here, where the meaning of contract terms (all of Paragraph 22) is at issue. Those cases involved either the addition of a new or implied obligations or unambiguous language. PBTM does not argue that additional terms be added to the 2014 Agreement to impose new obligations but that the duty of good faith and fair dealing be applied to the parties' performance of existing terms, as interpreted by this court.

*Endejan Law, LLC*
*5109 23ʳᵈ Ave. W*
*Everett, WA. 98203*

sentence of Paragraph 22 would become surplusage and meaningless under such an interpretation. Courts must interpret contract provisions to avoid "'a strained or forced construction' leading to absurd results." *Eurick v. Pemco Ins. Co.*, 108 Wn. 2d 338,341, 738 P.2d 251 (1987).

If the parties intended to remove the association between PBTM and the Seahawks, why did the Seahawks draft the first sentence of Pars. 22 to impose a duty on PBTM to maintain this association in the first place? Because FNW had control of the 2014 Agreement and drafted Paragraph 22, it must be construed against FNW. *Guy Stickney, Inc. v. Underwood*, 67 Wn.2d 824, 827, 410 P.2d 7 ( 1990??). This favors PBTM's interpretation and expectation that it could continue, as it had, to make and offer its VOLUME 12 Seahawks products.

Under well-settled principles of contract interpretation, Paragraph 22 must be interpreted to ascertain the parties' intent. *Berg v. Hudesman*, 115 Wn.2d 657, 663, 801 P.2d 222 (1990). To determine the parties' intent, Washington courts apply the "context rule" of contract interpretation, which allows a court, while viewing the contract as a whole, to consider extrinsic evidence, such as the circumstances leading to the execution of the contract, the subsequent conduct of the parties, and the reasonableness of the parties' respective interpretations. *Berg* at 667-69. The "context rule" applies even to an unambiguous disputed provision. *Berg* at 669.

This extrinsic evidence detailed in the FAC (Dkt. 47 ₱₱ 26-31, 43-45) shows that the circumstances leading to the 2014 Agreement included a multi-year understanding and agreement between the Seahawks and PBTM that PBTM was allowed, even encouraged, to provide products that were associated with the Seahawks and that the Seahawks wanted this association, as shown by the 2011 Agreement that allowed the Seahawks to use VOLUME 12. These circumstances show that PBTM never intended to give FNW the unilateral right to veto its products, as long as PBTM complied with the first sentence in Paragraph 22.[16] The FAC

---

[16] These circumstances are relevant for purpose of determining the parties' intent. The 2014 Agreement negotiations initially dealt only with a different trademark—LEGION OF BOOM. After several drafts prepared by the Seahawks, Paragraphs 21 and 22 were slipped in with restrictions on other trademarks, requiring mandatory consent for usage. PBTM objected to these restrictions, and the Seahawks agreed to remove them but did so only for Paragraph 21, not

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA. 98203*

1  shows that in  the 2014 Agreement both parties intended and expected a continued association

2  between PBTM's VOLUME 12 products and the Seahawks, that FNW management assured

3  PBTM of this continued association, and that PBTM's performance under the contract would

4  include VOLUME 12 products with this association. FNW never told PBTM that FNW would

5  refuse any association with the Seahawks under Paragraph 22 prior to  the 2014 Agreement.

6      The duty of good faith and fair dealing arises with respect to how each party performs

7  under a specific contract term and is a duty requiring "'faithfulness to an agreed common

8  purpose and consistency with the justified expectations of the other party.'" *Edmonson v.*

9  *Popchoi*, 172 Wn.2d 272, 280 (Wash. 2011) (quoting RESTATEMENT (SECOND) OF CONTRACTS §

10  205, cmts. a).

11      Breach of that duty does not require breach of a contract term, so FNW's argument that

12  it could not breach its duty because no contract term required its consent misses the mark. What

13  is at issue is *how FNW exercised its rights in Paragraph 22*.FNW's actions, after the 2014

14  Agreement was signed, continuing after December 23, 2016, violated the duty of good faith and

15  fair dealing because their actions violated the parties' common purpose and expectations.

16      In *Rekter v. Dep't of Soc. & Health Servs.*, 18 WN. 2d 102, 11-112, 323 P.3d 1036

17  (2014), the court explained that this duty "obligates the parties to cooperate with each other so

18  that each may obtain the full benefit of performance." The court explained that breach of this

19  duty can occur without the need for the Seahawks to breach a contractual duty, so the absence

20  of such a duty does not matter in the legal analysis:

> DSHS argued that as a matter of law, the jury cannot find a violation of the
> duty of good faith and fair dealing without first finding a violation of a
> contractual term. We disagree. As the Seventh Circuit has said, "It is, of
> course, possible to breach the implied duty of good faith even while fulfilling
> all of the terms of the written contract." *Metavante Corp. v. Emigrant Sav.*
> *Bank*, 619 F.3d 748, 766 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 1784 (2011).
> Similarly, the California Supreme Court observed that "the breach of a specific

22 dealing with VOLUME 12. PBTM did not discover this discrepancy until after the contract was signed. They protested and were assured by Seahawks management that this discrepancy would be corrected but it never was. Thus, PBTM never intended to let FNW have the right to withhold consent on the VOLUME 12 products associated with the Seahawks because of that association. (Dkt. 47 ¶¶ 43-45)

OPPOSITION TO MOTIONS TO DISMISS FOURTH
AMENDED COMPLAINT  – 14
No. 2:19-cv-02081-RSM

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA. 98203*

provision of the contract is not a necessary prerequisite [to a breach of good faith and fair dealing claim]. Were it otherwise, the covenant would have no practical meaning, for any breach thereof would necessarily involve breach of some other term of the contract." *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373, 826 P.2d 710, 6 Cal. Rptr. 2d 467 (1992) (citation omitted).

In *Rekter*, the court affirmed a jury verdict that found that the State had violated the duty of good faith and fair dealing in a contract with individual service providers that provided care for individuals with disabilities. The State adopted a formula that paid these providers fifteen percent less if they lived with their clients than those who did not by arbitrarily reducing their hours. Because one party retained the discretionary authority to determine a future term (i.e., compensation), the State violated the duty of good faith and fair dealing by unilaterally docking the plaintiff service providers' pay contrary to their expectations from an earlier master agreement. So, too, in this case FNW retained the discretionary authority to grant approval, which was a prerequisite for PBTM to make and market its VOLUME 12 Seahawks-related products. FNW exercised this discretion to defeat PBTM's expectations and put PBTM in an untenable position: If PBTM made and offered products that were not associated with the Seahawks, FNW could sue PBTM for breach of the first sentence of Paragraph 22. If PBTM chose to make and market products associated with the Seahawks, FNW threatened to sue them. PBTM could not use its legitimate trademarks without jeopardy.

Finally, FNW concealed its true purpose in Paragraph 22- to prevent a competitor from using 12-related trademarks and to gain control over those trademarks without having to pay for them.[17] The Seahawks' alleged justification for their actions as protection of its intellectual property is nothing but subterfuge and amounts to unjustified interference with the intellectual property rights of another party—PBTM.  This type of conduct also  violates the duty of good faith and fair dealing. In *Wash. Potato Co. v. Simplot Co.*, 2017 U.S. Dist. LEXIS 232816, at *20, 2017 WL 11556700 (E.D. Wash. Oct. 26, 2017), the court said, "'Subterfuges and evasions

---

[17] The facts surrounding the 2014 Agreement support this conclusion. *See* n.2.

OPPOSITION TO MOTIONS TO DISMISS FOURTH
AMENDED COMPLAINT – 15
No. 2:19-cv-02081-RSM

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA. 98203*

violate the obligation of good faith in performance even though the actor believes his conduct to be justified.'" *Id.* (quoting RESTATEMENT (SECOND) OF CONTRACTS § 205, cmts. d). The court explained that "'[t]he implied covenant of good faith and fair dealing requires a promisor to reasonably facilitate the occurrence of a condition precedent by . . . refraining from conduct which would prevent or hinder the occurrence of the condition . . . .'" (citations omitted)

In this case, FNW prevented, and continually prevents, PBTM from making and offering VOLUME 12 products associated with the Seahawks by unreasonably and continually asserting its "consent" rights as a roadblock and insisting that PBTM VOLUME 12 products have no association with the Seahawks. FNW's breach of the duty of good faith and fair dealing continues to this day. Dkt. 47 ⁋ 78. Given the true legal meaning of the duty of good faith and fair dealing, as discussed herein, the FAC properly states a cause of action for FNW's breach of this duty since December 23, 2016.

**E.    The Seahawks Lost the Right to Use the VOLUME 12 Trademark Once The 2014 Agreement Took Effect.**

In the Order, this Court ruled that the 2014 Agreement superseded and rescinded the earlier 2011 Agreement, because the latter agreement was between the same parties and   dealt with the same subject matter; namely FNW's rights to the VOLUME 12 trademark owned by PBTM. This was the reason expressed   for the dismissal of Count 4 of the PBTM's Third Amended Complaint, which alleged breach of the 2011 Agreement. Dkt. 46, pp. 16-18. The Order is the basis for Counts Eight and Nine in the FAC.

The "same subject matter" was the delineation of FNW's rights over the VOLUME 12 mark. The 2011 Agreement  gave the Seahawks the right to use VOLUME 12 on specified products and in specified places. According to the Order, this right was replaced by the right to control PBTM's use of VOLUME 12 in Paragraph 22 of the 2014 Agreement. This agreement has an integration clause that states "this is the full and complete understanding between the parties."( ⁋ 29) Thus, the Seahawks' license to use VOLUME 12 was replaced by Paragraph

OPPOSITION TO MOTIONS TO DISMISS FOURTH
AMENDED COMPLAINT  – 16
No. 2:19-cv-02081-RSM

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA. 98203*

1   22's  consent rights, according to the Order,  and FNW lost  any right to use, or have a license,

2   to use the VOLUME 12 trademark once the 2014 Agreement was in place.

3   **F.      PBTM Requests a Declaration That The 2011 Agreement Was Superseded or**
       **Rescinded, as Stated in the Order.**

4
5           The language of the Order gave rise to Count Nine's request for declaratory relief. The

6   Order dismissed PBTM's claim for breach of the 2011 Agreement  because the subject matter

7   of the 2011 Agreement had been superseded or rescinded by the terms of the 2014 Agreement

8   on the subject matter of the Seahawks' rights over VOLUME 12.

9            The Seahawks nonetheless contend that the licensing terms in the 2011 Agreement

10  remain in effect, and they still have the right to use VOLUME 12. Dkt. 49, p.32. Indeed, they

11  use this purported license as a defense to PBTM's infringement claim. Dkt. 49, p. 21-22.

12  Clearly the parties have an active controversy between them about FNW's right to use

13  VOLUME 12.  Therefore, PBTM requests the Court to issue an interpretation of both its Order

14  and the 2011 Agreement pursuant to the declaratory judgment statute, 28 U.S.C. § 2201. Such

15  an action is proper and justiciable where issues of trademark law and contract interpretation

16  issues are intertwined, and a justiciable controversy exists. *See Aladdin's Eatery Sys. v. Phwlv*,

17  2020 U.S. Dist. LEXIS 250889 (D. Nev. April 20, 2020). Because  the 2011 Agreement was

18  superseded or rescinded, it is no longer in effect. To "supersede" means "to annul, make void,

19  or repeal by taking the place of," BLACK'S LAW DICTIONARY 1452 (7th ed. 1999); *Olander v.*

20  *Compass Bank*, 363 F.3d 560, 566 (5th Cir. 2004). A fellow court in the Ninth Circuit has ruled:

21            Where the entire subject-matter is covered, and there is nothing on the face of
             the second agreement to show that it is intended to be supplemental to the
22            original agreement, it supersedes and rescinds the original, not as a question of
             intention, but by operation of law, as a result of steps taken by the parties . . . .

23  *BlueEarth Biofuels LLC v. Hawaiian Elec. Co.*, 2010 U.S. Dist. LEXIS 121225 *26 (D. Hawaii

24  Nov. 15, 2010).

25            In this case,  the 2014 Agreement did not "supplement the 2011 Agreement, according

26  to the Order, but replaced the rights to VOLUME 12 from the 2011 Agreement with those

27  decreed in the 2014 Agreement. The integration clause means that the 2014 Agreement is now

OPPOSITION TO MOTIONS TO DISMISS FOURTH
AMENDED COMPLAINT  – 17
No. 2:19-cv-02081-RSM

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA. 98203*

the entire agreement between the parties on that subject. Therefore, the Seahawks have no existing rights (i.e., to license VOLUME 12) because the licensing provision of the 2011 Agreement has been "superseded and rescinded."

The apparent controversy over the Seahawks' rights or license can only be determined by this Court's clarification of its Order as requested by Count Nine of the FAC.

**G.  Because the Seahawks Had No Right to Use VOLUME 12 After The 2014 Agreement, The Complaint Properly Alleges A Cause of Action for Trademark Infringement for The Seahawks' Infringing Use of VOLUME 12.**

Because  the 2011 Agreement was replaced by the 2014 Agreement, according to the Order, the Seahawks' use of PBTM's VOLUME 12 trademark after that date was without license or consent of PBTM. PBTM's claim of trademark infringement provides another independent basis for this  court's jurisdiction under 28 U.S.C. § 1338 and 15 U.S.C. § 1114, which the USPTO cannot handle[18].

FNW incorrectly alleges that the Count Eight of the FAC fails to state a claim, because it does not identify how the Seahawks  used PBTM's marks in commerce.  To state a valid cause of action for trademark infringement under the Lanham Act, a plaintiff "must prove: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012) (quoting *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011)). PBTM has plead properly each required element.

PBTM has plead a protectable interest in its Existing TMs. (Dkt. 47, ¶16.) Defendants do not challenge PBTM's interest in and ownership of the Existing TMs in their motions and have never done so. PBTM has also pled that Defendants' use of PBTM's marks is likely to cause consumer confusion (Dkt. 47, ¶ 16), just like those  in Defendants' oppositions

*Even if* PBTM was required to plead "use in commerce" in its complaint, it has done so for purposes of withstanding a motion to dismiss. The FAC states that the Seahawks, *after* the

---

[18] See ft. 13.

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA. 98203*

2014 Agreement, "continued to use that trademark [VOLUME 12] around the stadium and on jerseys under the 2011 Agreement." Dkt. 47,¶¶ 45., The FAC describes how the 2011 Agreement conferred the right to use VOLUME 12 "in conjunction with the sale of Seahawks jerseys. "Dkt. 47 ¶ 29. The FAC alleges that the "[d]efendants have and continue to use 12 unlawfully to sell products and on goods themselves" and that "they have profited…by sales and publicity" from use of PBTM's lawful marks. Dkt. 47 ¶¶ 104, 107, 108.  The FAC explicitly describes how the Seahawks' use of PBTM's Existing TMs are confusingly similar so as to infringe. Dkt. 47 ¶ 102. The FAC alleges that Defendants participated in the market for the sale and distribution of products bearing Seahawks trademarks, including jerseys and other items that the Seahawks may have sold bearing a PBTM mark. Dkt. 47 ¶¶ 52, 53.[19]

Thus, these allegations demonstrate "use in commerce." The Lanham Act defines that term in 15 U.S.C.§ 1127:

> The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce—
>
> (1) on goods when—
>
> (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
>
> (B) the goods are sold or transported in commerce . . . .

The Ninth Circuit in *Rearden,* 683 F.3d at 1210 said that "use in commerce" depends upon the "totality of the circumstances" when ruling on a summary judgment motion involving the sale and display of the trademark at issue. These circumstances are to be probed in discovery as are the *Sleekcraft* factors,[20] which FNW claims erroneously must be alleged in the complaint.

---

[19] The defendants' oppositions concede their use of 12 trademarks on goods and services in commerce. Dkt. 26, Ex. A; Dkt. 47, n. 3. These trademarks are so similar  to PBTM's Existing TMs that they should be canceled, as requested by Count Two in the FAC

[20]These factors guide a court in ruling on summary judgment on the issue of "customer confusion" and are intensely fact-specific.

These are: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348-49 (9th Cir. 1979)).

1   The FAC, construed in favor of PBTM, certainly apprises Defendants of how they used

2   PBTM's marks without its permission on products sold after the 2014 Agreement. Common

3   sense tells the Court that the Seahawks used these marks commercially to make money for the

4   team. FNW's hyper-technical "magic words" argument fails because  the FAC  describes the

5   conduct that shows that the Seahawks *used* VOLUME 12 *commercially*. The failure to use this

6   term is not fatal to the FAC, and FNW's motion on this basis should be denied.

7   **H.  The Law Does Not Support the Defendants Motions to Dismiss the PBTM Antitrust**

8   **Claims**

        *1.*  **Fed.R.Civ.P.**  *12 (g) Precludes Defendants' from Raising their Claim that the FAC*
9            *must be dismissed  for Failure to Allege Harm to Competition or Consumers.*

10           **Fed.R.Civ.P.**  12(g) is a rule of procedural fairness. It prevents the defendants from

11   having another bite at the proverbial apple by  preventing parties from raising as a basis for

12   dismissal an objection that was "available to the party but omitted from its earlier motion." The

13   FAC contains  virtually the same allegations as to the  requisite "antitrust" injury" as  in PBTM's

14   Third Amended Complaint, which was the subject of both defendants' first motions to dismiss.

15   See  DKT. 47, ¶¶ 63, 64; Dkt. 26, ¶¶ 56, 57.The defendants did not raise their new "antitrust

16   injury" objections in those motions. Dkt. 48,pp. 9-13; Dkt. 49, pp.19-21. **Fed.R.Civ.P.**  12(g)(2)

17   precludes them from first raising them now.

18

19   Recently, a fellow Court found such preclusion when second motions to dismiss were filed to an

20   amended complaint:

21
        First, the prejudice[21] to Interior Electric is manifest. Interior Electric filed this
22       complaint two years ago and has devoted considerable time and energy to twice
23       amending it. Considering defendants' Rule 12 (b)(6) motion now might require

24

25   _____
     [21] **Similarly**, PBTM would be prejudiced if the Court entertained the defendants' "new" objections. It filed its
     complaint in December of 2019 and has devoted considerable time and effort to conferring with defendants' counsel
26   and amending its complaint. Considering the "new" objection that has existed for a long-time could lead to further
     delay and further amendment. There is no reason this objection  could not have been raised earlier and it should not
27   be entertained now.

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA. 98203*

further amendment that could, and should, have occurred earlier. Second, T.W.C., Ryba, and Wilmer have provided no reason why they did not raise these objections earlier, despite being well aware of the claims against them. Their successive Rule 12 (b) (6) motion has thus resulted in a "scattershot approach to attacking" Interior Electric's causes of action, "imped[ing] speedy resolution of the case." Numerous district courts have declined to consider successive Rule 12 (b)(6) motions under similar circumstances. I join their numbers and hold that Rule 12(g)(2) now bars the defendants' motion to dismiss Interior Electric's unjust-8 enrichment, aiding-and-abetting, quantum-meruit, promissory-estoppel, and civil-conspiracy-9 against-T.W.C. claims.

*Interior Elec. v. T.W.C. Construct.,* 2020 U.S. Dist. LEXIS 186658 (D. Nev. Oct. 8, 2020) *12, 13

### 2.   *Even if the Court Considers the Defendants' New Objections, PBTM has Properly Plead the Requisite Antitrust Injury*.

*Khalid v. Microsoft Corp.,* 409 F. Supp. 3d 1023, 1031 (W.D. Wash. 2019) states:

"To survive a motion to dismiss, an antitrust complaint 'need only allege sufficient facts from which the court can ascertain the elements of an injury resulting from an act forbidden by antitrust laws." (quoting *Newman v. Universal Pictures*, 813 F. 2d 1519, 1522 (9th Cir. 1987) *cert. denied,* 486 U.S. 1059, 108 S. Sc. 2331, 100 L. Ed. 2d 931 (1988)

PBTM has alleged the requisite antitrust injury:" The injury suffered by PBTM due to the Defendants anti-competitive, unreasonable conduct described in Secs. IV. D.1. and 2 is the type of injury that the cited state and federal antitrust laws are intended to prevent." Dkt. 47 ⁋ 64. The FAC alleges that the Defendants' actions  constitute an unlawful unreasonable  restraint of trade ( Dkt. 47 ⁋ 56 ) because they reduce output in the Market  for the defined Products (Dkt. 47 ⁋ 53) by eliminating PBTM from the market. The antitrust laws were intended to prevent this conduct:

A restraint that has the effect of reducing the importance of consumer preference in setting price and output is not consistent with this fundamental goal of anti-trust law. Restrictions on price and output are the paradigmatic examples of restraints of trade that the Sherman    Act was intended to prohibit.

*National Collegiate Athletic Ass'n v. Board of Regents,* 468 U.S. 85, 107-08 (1984)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

The FAC states that PBTM's loss stems from the competition-reducing aspect of the defendants' behavior that eliminated them as a competitor which, in turn injures competition and consumers. (Dkt. 47 ¶¶ 52-56)  In *Glen Holly Entm't v. Tektronix, Inc.,* 352 F. 3d 367, 378 (9th Cir. 2003) the Ninth Circuit reversed dismissal of a claim for failing to allege an antitrust injury:

> Given that customers are the intended beneficiaries of competition, and that customers are presumptively those injured by its unlawful elimination, for pleading purposes we conclude that Digital Images has satisfied the requirement that it adequately allege antitrust injury to its business.

Thus, PBTM has alleged properly that their injury has harmed competition because the FAC states that the Defendants' concerted, anti-competitive actions have eliminated them as a competitor in the defined market and unreasonably restrained trade.[22] Under the applicable pleading rules the FAC adequately alleges facts from which this court can ascertain the requisite antitrust injury and the case should be allowed to proceed. As the Ninth Circuit said in *Ernest W. Halm, Inc. v. Codding,* 615 F. 2d 830, 833 (9th Cir. 1980) "Because we must accept the allegations of the complaint as true, and because of the policy disfavoring summary dismissals in antitrust actions…" the complaint should not have been dismissed. *Accord  Gorlick Distrib. Ctr, v. Car Sound Exhaust Sys.,* 2009 U.S. Dist. LEXIS 145037 (W.D.Wa. March 30, 2009); *Dang v. Dan Francisco Forty Niners*, 964 F. Supp. 2d 1097 (N.D. Cal. Aug. 2, 2013)

NFLP  also makes a bizarre, twisted argument that is flat-out wrong, claiming that PBTM lacks standing to bring its antitrust claims because it is a competitor, not a consumer. Dkt. 48, pp. 7,9-13. The FAC clearly alleges that PBTM was, and could be, a competitor of the defendants. Dkt. 47 ¶¶ 53,54,56. It is well-settled that a plaintiff in an antitrust case can be either a competitor *or* a consumer. *In re Ins. Antitrust Litig.,* 938 F. 2d 919, 926 (9th Cir. 1991)(

---

[22] NFLP also erroneously  suggests that the FAC fails because it alleges that the antitrust laws are primarily concerned with interbrand competition and that the complaint really deals with intraband competition. This is wrong for two reasons. First, the FAC alleges a market involving possible interbrand and intraband competition. Second, antitrust law is just as concerned about intrabrand competition as interbrand : "Antitrust law addresses distribution restraints in order to protect consumers from the higher prices or diminished choices that can sometimes result from limiting intrabrand competition.") *Glen Holly*, 352 F. 3d at 377 quoting  Hovenkamp, *Antitrust Law* P 357b. (2d ed. 2000)

OPPOSITION TO MOTIONS TO DISMISS FOURTH
AMENDED COMPLAINT  – 22
No. 2:19-cv-02081-RSM

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA. 98203*

1    *rev'd in part on other grounds* 113 S. Ct. 2891 and *cert denied* ___US___, 113 S. Ct. 3034

2    (1993); *Sheahan v. State Farm Gen. Ins. Co.,* 394 F. Supp. 3d 997, 1011 (N. D. Cal. 2019).[23]

3        **3.  *The FAC Properly Alleges Antitrust Violations.***

4        The Defendants distort and mis-state the nature of PBTM's anti-trust claims, which  do

5    not involve the licensing of any Seahawks trademarks because PBTM has no need to license

6    their own trademarks. Nor does they involve the Seahawks' alleged protection of its trademarks

7    under the 2014 Agreement, which as discussed above, has been used as a vehicle to prevent

8    PBTM from using its Existing TMs.[24]

9        BTM has alleged sufficient facts in the FAC to state an antitrust claim under Section 1

10   of the Sherman Act, 15 U.S.C. § 1, which requires allegations of "a contract or conspiracy

11   among two or more person or entities, with the intent to harm or restrain trade, and which

12   actually injure competition." *Kendall v. Visa, U.S.A., Inc.,* 518 F. 3d 1042, 1047 (9th Cir. 2008);

13   *Ernest W. Halm, Inc. v. Codding,* 615 F. 2d 830, 844 (9th Cir. 1980). The FAC (Dkt. 47 ¶¶ 50-

14   56) describe  a conspiracy between FNW and NFLP to keep PBTM out of the Market  (Dkt. 47

15   ¶ 53)  for  the sale of Seahawks-related products through a variety of actions, including jointly

16   claiming  (falsely) that the 2014 Agreement precludes PBTM from ever using its Existing TMs

17   in association with the Seahawks, and filing numerous baseless Oppositions at the USPTO to

18   prevent PBTM from obtaining new trademark to use on new Seahawks-related products. The

19   net result of these actions is the removal of a competitor to the market that  caused a "clear and

20

21

22   ---

[23] Moreover, the cases relied upon by NFLP did not involve motions to dismiss but summary judgment  motions,

23   such as  *Rebel  Oil Co. v. Atlantic Richfield Co.*, 51 F. 3d 1421 (9th Cir. 1995) quoted extensively by NFLP, which
dealt with abuse of market power by below-cost pricing-not direct annihilation of a competitor. Only *The Pls.com,*

24   *LLC v. Nat'l Assoc. of Realtors*,  2021 U.S. Dist. LEXIS 21098 ( C.D. Cal. Feb. 3, 2021) involved dismissal of a
complaint in a case where the plaintiff had not alleged that it had been eliminated from the relevant market, unlike
PBTM's claims here.

25   [24] FNW cites *Clorox Co. v. Sterling Winthrop, Inc*. 117 F. F. 3d 50 (2nd Cir. 1997) which involved non-ambiguous
contract terms stating how a trademark could  be used  and it did not prohibit Clorox from using the trademark to

26   make and sell  products under the contest trademark Pine-Sol. That is not the case here. The 2014 Agreement does
not contain similar terms. While it provides how the PBTM  may use its marks, *only in association with the*

27   *Seahawks,* FNW's consistent and continued refusal to allow them to do so is not based on trademark law but is an
unreasonable restraint of trade and not enforcement of an agreement.

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA. 98203*

unreasonable restraint of trade in interstate commerce" which harmed competition and created an antitrust injury. Dkt. 47 ⁋⁋ 63, 64.

PBTM has alleged sufficient facts in the FAC to state an antitrust claim under Section 2 of the Sherman Act 15 U.S.C. § 2, which must allege  the defendant "(1) possessed monopoly power[25] in the relevant markets; (2) willfully acquired or maintained its monopoly power through exclusionary conduct; and (3) caused antitrust injury." *Am.Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof.Publications, Inc.,* 108 F. 3d 1147, 1151 (9th Cir. 1997).

The FAC clearly alleges that PBTM was, and could be, a competitor of the defendants in the Market. Dkt. 47 ⁋⁋ 53,54,56. It alleges  that "the Defendants own a dominant share of the Market for the Product" acquired through "anti-competitive conduct", which is described Secs. IV.D.1. and 2 of the FAC.  Dkt. 47 ⁋⁋60-62.  As described in Sec.III.H.2.  PBTM has alleged an appropriate "antitrust injury". While the Defendants try to interject other facts that they claim must be plead, these are not required and illustrate why this case must be allowed to proceed to discover relevant facts. They provide no reason to dismiss this case.

## IV. CONCLUSION

For the foregoing reasons  the defendants' motions to dismiss should be denied.


DATED April 12, 2021.

---

[25] FNW must not have read the FAC because it claims that it does not allege that the Seahawks possess market power. Paragraph 61 of the FAC states "This gave the Defendants monopoly power in the Market for the Products." Indeed, both defendants  have market power in this market by virtue of FNLP's licensing power with FNW's agreement and FNW's claimed "veto" power over PBTM's Existing TM.s This is echoed in Paragraph 81, which states that they "have achieved monopoly power in the Market for the Products." FNW  really just quibbles with PBTM's amended definition of market in Paragraph 53. PBTM has defined an existing market recognized by courts. *American Needle, Inc. v. New Orleans Louisiana Saints*, 385 F. Supp. 687, 696 (N.D. Ill. 2005). It would be error to dismiss the FAC because of its new market definition because PBTM is entitled to discover facts to prove this market. While dismissal could occur on a future motion for summary judgment it is not proper at this early stage on this motion to dismiss. Moreover, " [T]he definition of the relevant market is a factual inquiry for the jury, and the court may not weigh evidence or judge witness credibility." *High Technology Careers v. San Jose Mercury News,* 996 F.2d 987, 990 (9th Cir. 1993).

Endejan Law, LLC
5109 23rd Ave. W
Everett, WA. 98203

Respectfully submitted,

ENDEJAN LAW LLC

 _s/Judith A. Endejan_
Judith A Endejan, WSBA #11016
5109 23rd Avenue West
Everett, WA. 98203
Ph: 206-799-4843
Email: jendejan@gmail.com

VERNA LAW PC

 _s/Anthony M. Verna III_
Anthony M Verna III*
80 Theodore Fremd Avenue
Rye, NY 10580
Ph: 914-908-6757
Email: anthony@vernalaw.com
*Admitted Pro Hac Vice

Attorneys for Plaintiff

OPPOSITION TO MOTIONS TO DISMISS FOURTH
AMENDED COMPLAINT  – 25
No. 2:19-cv-02081-RSM

Endejan Law, LLC
5109 23rd Ave. W
Everett, WA. 98203