UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PBTM LLC,

Plaintiff,

v.

FOOTBALL NORTHWEST, LLC, *et al.*,

Defendants.

Case No. C19-2081RSL

ORDER DENYING DEFENDANTS' MOTION FOR A STAY

This matter comes before the Court on "Defendants' Motion for Stay of Proceedings Pending Decision from Trademark Trial and Appeals Board." Dkt. # 61. Having reviewed the submissions of the parties, the Court finds as follows:

**I. BACKGROUND**

PBTM, previously known as Volume 12, LLC, is a Nevada limited liability company. PBTM brings this action against defendants Football Northwest LLC ("the Seahawks") and NFL Properties, LLC ("NFLP") related to the licensing and registration of trademarks involving the number "12." In June 2009, PBTM began using a styled number 12 in conjunction with the term "Volume" or "V" on products that included towels, flags, banners and flyers:




PBTM has filed six applications for "12" trademarks with the United States Patent and Trademark Office ("USPTO") on an "intent to use" basis. Defendants have opposed the applications in part because plaintiff's use of the marks is likely to cause consumer confusion and will dilute the distinctive qualities of defendants' marks. Dkt. # 26-1 at 7-8.

PBTM filed this lawsuit on December 23, 2019, shortly after defendants made clear their intent to oppose its applications. In its Fourth Amended Complaint, PBTM seeks declarations that PBTM has the right to register its "12" marks and that five trademarks owned by the Seahawks must be cancelled. Dkt. # 47 at ¶¶ 65-75. PBTM expressly seeks a declaration that the trademarks it seeks to register "will not infringe upon any of Defendants' trademarks." *Id*. at ¶ 68. *See also Id.* at ¶ 6 ("Based upon the defendants' actions PBTM has a real and reasonable apprehension that PBTM will be subject to legal liability without a conclusive declaratory judgment from this Court as to PBTM's non-infringing rights in its "12" marks.").

In the context of a motion to dismiss, the Court found that PBTM's claims for declaratory relief presented a "case of actual controversy" over which the Court had subject matter jurisdiction because PBTM has a "real and reasonable apprehension" that it would be subject to liability if it attempted to use its marks. *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007) (quoting *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1555–56 (9th Cir. 1990)). The Court noted that, "[i]nterspersed in defendants' case and controversy argument is the suggestion that the Court should abstain from hearing the dispute

in favor of the administrative process before the USPTO" and invited defendants to file a motion for a stay pending resolution of the administrative proceedings if they felt such relief were appropriate. Dkt. # 58 at 20-23. This motion followed. Defendants argue that a stay in favor of the Trademark Trial and Appeal Board ("TTAB") proceeding is warranted under the Declaratory Judgment Act, the primary jurisdiction doctrine, and the Court's inherent authority.

## II. DISCUSSION

### A. Declaratory Judgment Act

> Under the Declaratory Judgment Act, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). This provision "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants," even if the declaratory claim "otherwise satisfies subject matter jurisdictional prerequisites." *Wilton* [*v. Seven Falls Co*., 515 U.S. 277, 282 (1995)]. In other words, a district court is "under no compulsion to exercise [its] jurisdiction" over declaratory claims. *Brillhart v. Excess Ins. Co. of Am*., 316 U.S. 491, 494 (1942); *see also Gov't Emps. Ins. Co. v. Dizol* , 133 F.3d 1220, 1223 (9th Cir. 1998) ("The Act gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." (internal quotation marks and citation omitted)). So long as it reasonably considers the relevant factors from *Brillhart* and *Dizol*, "a district court is authorized" as a matter of discretion to "stay or to dismiss an action seeking a declaratory judgment." *See Wilton*, 515 U.S. at 288; *Dizol*, 133 F.3d at 1223, 1225 & n.5.

*Argonaut Ins. Co. v. St. Francis Med. Ctr.*, 17 F.4th 1276, 1280 (9th Cir. 2021). Under *Brillhart*, the Court considers whether a stay will avoid needless determinations of state law issues, discourage litigants from filing declaratory actions as a means of forum shopping, and avoid duplicative litigation. 316 U.S. at 494. Under *Dizol*, the Court further considers "whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is

being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies." 133 F.3d at 1225 n.5 (quoting *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 145 (9th Cir. 1994)). The three *Brillhart* factors "remain the philosophic touchstone for the district court." *Dizol*, 133 F.3d at 1225.

Defendants' Declaratory Judgment Act argument ignores the fact that, in seeking a declaration of its rights in the "12" trademarks pending before the USPTO, plaintiff seeks a declaration of non-infringement. Because that form of relief is unavailable from the TTAB, defendants' arguments regarding forum-shopping, duplicative litigation, and the resolution or clarification of the controversy are unpersuasive. The Court will exercise discretionary jurisdiction under the Declaratory Judgment Act.

**B. Doctrine of Primary Jurisdiction**

"Primary jurisdiction is a prudential doctrine that permits courts to determine 'that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch.'" *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)). The Ninth Circuit has already determined, however, that deferral of a trademark infringement (or non-infringement) claim in favor of ongoing TTAB proceedings is not appropriate under the doctrine of primary jurisdiction. *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1162-65 (9th Cir. 2007). Thus, the doctrine of primary jurisdiction does not provide a basis for a stay in this case.

**C. Discretionary Stay**

A district court may also stay proceedings pursuant to its inherent power to "control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). A stay in favor of independent proceedings that will bear upon the case may be appropriate if the Court finds that the stay "is efficient for its own docket and the fairest course for the parties." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). "This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id.* at 863-64. The competing interests that a district court must weigh in deciding whether to grant a stay include: (1) "the possible damage which may result from the granting of a stay;" (2) "the hardship or inequity which a party may suffer in being required to go forward;" and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55).

1. Damage from a Stay

"A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva*, 593 F.2d at 864. Neither party has presented evidence regarding the time in which a TTAB proceeding could reasonably be expected to conclude. Plaintiff argues, however, that a stay in favor of the TTAB proceeding will cause unnecessary delay and prejudice because "there is no doubt that the Defendants would appeal any adverse TTAB ruling" resulting in the relitigation of "infringement/likelihood of confusion for years." Dkt. # 65 at 6. Section 1701(b)

of Title 15 authorizes any party who is dissatisfied with the TTAB's decision to file a civil action, during which the testimony and exhibits considered by the TTAB can be admitted and have "the same effect as if originally taken and produced in the suit." 15 U.S.C. § 1701(b)(3). Thus, "Congress [has] provided for *de novo* review of TTAB decisions in district court." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 160 (2015). Because the purpose of plaintiff's declaratory judgment claims is to clear the way for it to begin the manufacture and production of "12" memorabilia, the delay resulting from an initial agency action that would then be subject to *de novo* review in district court is significant.

2. Hardship or Inequity to the Parties

Defendants argue that, "with the issues now narrowed to those squarely within the TTAB's bailiwick, hearing them in that forum in the first instance and staying these proceedings will avoid hardship and inequity to" defendants because they were the first-to-file and the TTAB "was created to address these very issues." Dkt. # 61 at 14. Defendants again fail to acknowledge that plaintiff's request for a declaration of non-infringement falls outside the TTAB's bailiwick. Nor do they explain how they will be adversely impacted by having to litigate in this Court rather than before the TTAB: the parties spent virtually no time before the TTAB and this Court has jurisdiction over all aspects of plaintiff's declaratory judgment claims. The Court therefore concludes that this factor weighs against a stay.

3. The Orderly Course of Justice

Whether a stay would promote "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law" is complicated. While the Court acknowledges that the TTAB has experience with and a relative expertise in the registration and cancellation issues raised by plaintiff's declaratory judgment act claims, its

resolution of those issues would not be binding in an appeal under 15 U.S.C. § 1701(b)[1] and it cannot make an infringement or non-infringement determination. Thus, a stay in favor of the TTAB proceeding is unlikely to simplify the issues that will eventually be before the Court in any case. Nor is there any indication that the TTAB proceeding has progressed sufficiently for it to be efficient to wait for its disposition.

None of the three *Landis* factors favors a stay in these circumstances.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for a stay pending resolution of the TTAB proceeding (Dkt. # 61) is DENIED.

Dated this 21st day of June, 2022.

Robert S. Lasnik
United States District Judge

[1] Defendants' reliance on *B & B Hardware*, 575 U.S. at 160, for the proposition that issue preclusion applies to the TTAB's decisions as long as the other ordinary elements of the doctrine are met is misplaced. The Supreme Court made clear that the TTAB decisions were subject to *de novo* review on appeal to the district court: it is only if the TTAB is unchallenged that it has preclusive effect.